UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 18-cr-667 |
| v. | ) | |
| | ) | Hon. Steven C. Seeger |
| GARY HOWARD | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

    Defendant Gary Howard wants to call Anthony Sabaini, a former agent with the Department of Homeland Security, as a witness in his upcoming trial. Defendant hopes to elicit testimony to support his public authority defense. That is, Defendant hopes that Sabaini will testify that he authorized Defendant to buy and sell cocaine, and had the authority to give that directive.

    That plan faced a major roadblock: Sabaini responded to the subpoena by asserting the Fifth Amendment. Sabaini is currently incarcerated for an assortment of financial crimes related to his service with Homeland Security, and his case is on appeal. Sabaini believes that truthful testimony in the upcoming trial might incriminate him.

    Counsel for Howard asked this Court to conduct an *in camera* interview with Sabaini to assess whether he has a basis for asserting the Fifth Amendment. This Court granted that request, and recently presided over an *ex parte* hearing.

    Based on the facts at hand, the Court concludes that Sabaini has a legitimate basis for asserting his right against self-incrimination under the Fifth Amendment.

**Background**

    A four-count superseding indictment charged Gary Howard with four drug offenses, including conspiracy to knowingly and intentionally possess with the intent to distribute cocaine (Counts 1 and 3), attempt to knowingly and intentionally possess with intent to distribute cocaine (Count 2), and knowingly and intentionally distributing and causing to be distributed cocaine (Count 4).

    In a nutshell, the indictment alleges that Defendant engaged in actual or attempted narcotics transactions on two specific days in 2017 and 2018. The indictment charged Defendant with selling 57 ounces of cocaine to a DEA confidential source on January 13, 2017, and attempting to buy 10 kilograms of cocaine from another DEA confidential source on July 2, 2018.

Defendant Howard pleaded not guilty. Defendant also responded by asserting the public authority defense. The gist of the defense is that Anthony Sabaini – an agent of the Department of Homeland Security – authorized, directed, or asked Howard to engage in the two narcotics transactions in question on January 13, 2017 and July 2, 2018. Defendant contends that he was a confidential informant for the Department of Homeland Security.

Defendant subpoenaed Sabaini to testify in his upcoming trial. The subpoena posed a few challenges – some practical, some legal. Sabaini is currently incarcerated for a variety of financial crimes related to his tenure at Homeland Security. He received his sentence a few months ago, and the case is on appeal.

Given the potential jeopardy, this Court appointed counsel for Sabaini, and his counsel soon appeared. At a recent hearing, Sabaini's counsel represented that Sabaini would assert the Fifth Amendment if called to testify at Defendant's trial. *See* Sabaini's Status Report (Dckt. No. 317) ("If called as a witness in this proceeding, it is Mr. Sabaini's intention to assert his Fifth Amendment privilege to remain silent, regardless of who may call him as a witness.").

In response, counsel for Howard asked this Court to conduct an *ex parte* hearing with Sabaini, and explore whether he has a basis to assert the Fifth Amendment. *See* 4/17/24 Order (Dckt. No. 320). Defense counsel requested that the Court conduct an *in camera* interview during the hearing on April 17, 2024, and again on April 30, 2024. *See* 4/17/24 Order (Dckt. No. 320) ("The Court discussed the possibility of having an *ex parte* hearing with Sabaini and his counsel to explore the existence and scope of any privilege under the Fifth Amendment."); 4/30/24 Order (Dckt. No. 333).

Judge Lefkow followed a similar procedure when Fifth Amendment issues came up in a case involving Jon Burge, the former head of the Chicago Police Department. *See* 6/2/10 Order, *United States v. Burge*, 08-cr-846 (N.D. Ill.) (Dckt. No. 261) (Lefkow, J.). Following Judge Lefkow's lead, this Court agreed to talk with Sabaini privately.

Defense counsel facilitated the examination by filing under seal a list of 95 questions for the *in camera* examination of Sabaini. "The questions are submitted for testing Mr. Sabaini's blanket claim of Fifth Amendment Privilege asserted before the Court."[1] *See* 4/29/24 Def.'s *Ex Parte* Filing of Potential Questions for Anthony Sabaini to Assess Fifth Amendment Privilege (Dckt. No. 322).

The list of questions was organized into broad categories. By and large, the list of questions appeared to be counsel's outline for a direct examination of Sabaini at trial. *Id.* at 1 of 7 ("I will begin questioning with Anthony Sabaini's background . . . .").

---

[1] The filing is under seal, but this Court previously read this introductory sentence into the record, without objection. The Court did so to give the government and the public a sense of what Defendant filed.

2

As requested, this Court conducted the *ex parte* examination on April 30, 2024. This Court questioned Sabaini for over an hour, under oath. Sabaini's counsel was present. The parties did not attend. No one else attended, except court personnel. The hearing was transcribed, but the entire transcript is under seal.

This Court used defense counsel's proposed questions as a baseline. The interview covered some, but not all, of the questions on Defendant's list. This Court asked Sabaini about his relationship with Howard generally. And this Court also dove into the details of the two alleged narcotics transactions. For example, this Court asked Sabaini whether he authorized Howard to buy or sell cocaine on the dates covered in the indictment.

The purpose of the hearing was to assess whether Sabaini had a good faith basis to assert the Fifth Amendment. But the testimony was also helpful for this Court to understand whether a factual basis existed to support Howard's public authority defense.

After listening to the parties, and then listening to Sabaini privately, this Court concluded that Sabaini has a legitimate basis to assert the Fifth Amendment. The Court announced its ruling to the parties orally on May 1, 2024, so that the parties could prepare for trial accordingly. The Court also promised to follow up with a written ruling. This Order memorializes the basis for that ruling in greater detail.

## Analysis

"No person . . . shall be compelled in any criminal case to be a witness against himself[.]" *See* U.S. Const. amend. V. These words enshrine the privilege against self-incrimination.[2]

The privilege against self-incrimination sweeps broadly. The Fifth Amendment must "be accorded liberal construction in favor of the right it was intended to secure." *See Hoffman v. United States*, 341 U.S. 479, 486 (1951). If in doubt, "the benefit of that doubt must go to the witness asserting the privilege." *See Hillmann v. City of Chicago*, 918 F. Supp. 2d 775, 778 (N.D. Ill. 2013) (quoting *In re Corrugated Container Antitrust Litig.*, 661 F.2d 1145, 1151 (7th Cir. 1981)). A tie goes to the witness.

The privilege runs deep, too. The right against self-incrimination "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *See Hoffman*, 341 U.S. at 486. A chain has countless links. A "link" isn't a lot, but when it comes to the Fifth Amendment, a link is enough. *Id.*

That said, the Fifth Amendment applies only when the possibility of incrimination is within the realm of possibility. The Fifth Amendment does not entitle a witness to decline the witness stand simply to avoid the hassle or discomfort of testifying. A "witness may not employ

---

[2] "By including the Self-Incrimination Clause in the Bill of Rights, the framers affirmed that the American system of justice would reject the historic abuses of the Star Chamber[.]" *See In re Flint Water Cases*, 53 F.4th 176, 215 (6th Cir. 2022) (Thapar, J., concurring in part and concurring in the judgment).

3

the privilege to avoid giving testimony that he simply would prefer not to give." *See Roberts v. United States*, 445 U.S. 552, 560 n.7 (1980).

Given that limitation, a district court must determine whether the witness has a basis to invoke the Fifth Amendment. That is, a court has a "duty" to "determine the legitimacy of a witness' reliance upon the Fifth Amendment." *Id.*

Put differently, a witness's say-so that he risks incrimination does not "by itself establish the risk of incrimination." *See Ohio v. Reiner*, 532 U.S. 17, 21 (2001). The "inquiry is for the court." *Id.*

The Supreme Court has articulated the standard that drives a court's inquiry. The court must determine whether the witness has "reasonable cause to apprehend danger from a direct answer." *Id.* (cleaned up). In other words, the "basic test" is whether "the claimant is confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination." *See United States v. Apfelbaum*, 445 U.S. 115, 128 (1980) (cleaned up).

The Seventh Circuit has built on that foundation. When "a potential witness indicates that he will likely invoke his privilege against self-incrimination, the district court should ensure that the witness cannot possibly incriminate himself." *See United States v. Mabrook*, 301 F.3d 503, 506 (7th Cir. 2002). "If a witness's testimony may make him vulnerable to prosecution, the trial court may allow him to invoke his privilege and refuse to testify." *Id.*

"A district court should reject a witness's Fifth Amendment invocation only if the witness cannot possibly incriminate herself. Otherwise, the Fifth Amendment may be invoked so long as the witness has reasonable cause to fear prosecution if she gives a direct answer to the questions that may be posed during examination." *See United States v. Newton*, 76 F.4th 662, 670 (7th Cir. 2023) (cleaned up).

The Fifth Amendment does not require a district court to play the role of an oddsmaker, and figure out the probability that a witness would face criminal jeopardy. A "judge's prediction as to the likelihood of a prosecutor filing an indictment is not dispositive in ascertaining the permissible scope of a claim of Fifth Amendment privilege." *See In re Corrugated Container Antitrust Litig.*, 661 F.2d at 1151 (citation omitted).

In sum, the Fifth Amendment provides a blanket of protection "so long as there is a possibility of prosecution, regardless of a judge's assessment of the likelihood of prosecution." *Id.* at 1150. "[I]t is only when there is but a fanciful possibility of prosecution that a claim of Fifth Amendment privilege is not well taken." *See Nat'l Acceptance Co. of Am. v. Bathalter*, 705 F.2d 924, 927 (7th Cir. 1983) (citation omitted).

When reviewing a witness's invocation of the Fifth Amendment, a court "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." *See Hoffman*, 341 U.S. at 487 (citation omitted).

The Fifth Amendment affords broad protections to witnesses when it comes to self-incrimination. But sometimes those interests put the witness and the criminal defendant on a constitutional collision course. A criminal defendant may want to call a witness to testify on his behalf at trial, and may assert his right to do so under the Sixth Amendment. *See Newton*, 76 F.4th at 670; *see also* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy . . . compulsory process for obtaining witnesses in his favor[.]"). The defendant might want the witness to talk, but the witness might want to remain silent.

Sometimes there is a tug-of-war between the Fifth Amendment rights of a witness and the Sixth Amendment rights of a criminal defendant. And in that scenario, the Fifth Amendment rights of the witness come out on top. "When a subpoenaed witness invokes the Fifth Amendment, the privilege against self-incrimination generally trumps a defendant's Sixth Amendment right to compulsory process." *See Newton*, 76 F.4th at 670.

Based on the record, the Court concludes that Sabaini has a legitimate basis for asserting the Fifth Amendment, for three reasons. First, Sabaini was recently convicted in his own case, and that case is on appeal. Second, Sabaini's testimony could give rise to potential new charges, including obstruction. Third, the cross examination could take Sabaini into territory that would place him in jeopardy.

Overall, it's not much of a stretch to think that Sabaini – who is currently incarcerated – might face jeopardy by giving truthful testimony. After all, the government thinks that the relationship between Sabaini and Howard was corrupt. Forcing Sabaini to talk about his dealings with Howard would place him in potential jeopardy, and expose Sabaini to the risk of making a bad situation worse.

## I. Sabaini's Conviction and Appeal.

For starters, Sabaini's recent experience as a criminal defendant gives him a good faith basis to assert the Fifth Amendment. His relationship with Howard came up in his own trial, so Sabaini is understandably leery about testifying about that relationship in Howard's trial.

Sabaini was charged with and convicted of seven crimes. The convictions included: (1) one count of structuring a currency transaction, in violation of 31 U.S.C. § 5324; (2) five counts of willfully filing a false federal tax return, in violation of 26 U.S.C. § 7206; and (3) one count of engaging in a scheme to conceal a material fact in a matter within the jurisdiction of the Department of Homeland Security, in violation of 18 U.S.C. § 1001. *See* Gov't Mtn. in Limine to Allow Impeachment, at 2 (Dckt. No. 304); *see also United States v. Sabaini*, No. 20-cr-813 (N.D. Ill.) (Dckt. No. 128 – Judgment).

Sabaini appealed. *See United States v. Sabaini*, No. 20-cr-813 (N.D. Ill.) (Dckt. No. 132 – Notice of Appeal). His appeal is currently pending in the Seventh Circuit. *See United States v. Sabaini*, No. 23-3216 (7th Cir.).

So, the book on Sabaini's trial has not yet closed. The appeal is pending, so his Fifth Amendment privilege against self-incrimination remains alive and well. *See, e.g.*, *United States*

5

*v. Kennedy*, 372 F.3d 686, 692 (4th Cir. 2004) ("[A] defendant's right to invoke the Fifth Amendment as to events for which he has been convicted extends to the period during which the conviction is pending appeal. Because any post-conviction evidence could be used against a defendant if his conviction were to be overturned, the risk of coerced self-incrimination remains until the conviction has been affirmed on appeal.") (internal citations omitted).

True, Sabaini testified at his own criminal trial. But the Fifth Amendment privilege against self-incrimination is not a waive-it-once, lose-it-forever sort of thing. The waiver applies only to the proceeding where the waiver takes place. So, Sabaini may have waived his Fifth Amendment rights in his own trial, but he retains his Fifth Amendment rights when it comes to testifying in Howard's trial.

"A person who waives the privilege in one proceeding . . . does not thereby waive it in another proceeding." *See Shakman v. Democratic Organization of Cook County*, 920 F. Supp. 2d 881, 893 (N.D. Ill. 2013); *see also In re Flint Water Cases*, 53 F.4th 176, 194 (6th Cir. 2022) (Griffin, J.) ("[M]ost circuits have held that a waiver in one proceeding does not constitute a waiver in a second proceeding."). *But see In re Flint Water Cases*, 53 F.4th at 219 (Thapar, J., concurring in part and concurring in the judgment) (dissecting the origins of the "proceeding" caselaw).

When it comes to the Fifth Amendment, there is no such thing as "the cat is out of the bag." Each case is its own bag.

True, Sabaini's criminal case did not deal with the same offenses that Howard is charged with. But the charges don't have to overlap. The facts are what matters. And here, the relationship between Howard and Sabaini made up a significant portion of the government's evidence against Sabaini at his trial.

The parties in Sabaini's criminal case elicited testimony about his relationship with Howard. If Sabaini's relationship with Howard was at issue in the last prosecution, it is a small step to think that their relationship could be germane if he is retried, or if he is charged with a new crime. Forcing Sabaini to testify about his relationship with Howard in Howard's trial could compel Sabaini to testify about topics that could come up again in Sabaini's own case.

## II. Obstruction.

Sabaini has another potential reason to invoke the Fifth Amendment. At Sabaini's sentencing, the government asked for an obstruction enhancement.

The obstruction enhancement applies when "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." *See* U.S.S.G. § 3C1.1; *see also United States v. Barker*, 80 F.4th 827, 834 (7th Cir. 2023).

The government argued that Sabaini committed perjury when he testified at his trial. Judge Wood imposed the enhancement.

In other words, bad things happened the last time that Sabaini testified. The government requested an obstruction enhancement when he was sentenced, and the district court imposed that enhancement. In effect, Sabaini received a higher range under the Guidelines by taking the witness stand.

The obstruction enhancement understandably would give Sabaini hesitation as he looks forward. It doesn't take much of a leap to envision the government indicting him for obstruction if he testifies about the same topic at Howard's trial.

And then there is perjury. If his testimony at Howard's case is different than his testimony in his own trial, then the government could potentially charge him with perjury for the last trial, too.

A witness cannot avoid testifying based on the possibility that he might perjure himself. That is, the possibility of committing a future crime – a new act of perjury – is not a basis to assert the Fifth Amendment. The possibility of *future* perjury isn't enough. *See, e.g.*, *United States v. Thompson*, 561 F. Supp. 2d 938, 958 (N.D. Ill. 2008) ("[N]o one has the constitutional right not to testify on the ground that she will lie and thus be subjected to a perjury prosecution."); *United States v. Whittington*, 783 F.2d 1210, 1218 (5th Cir. 1986) (same).

But past perjury is different. The government could use future, truthful testimony as evidence that the witness committed perjury in a prior proceeding. The possibility that truthful *future* testimony could provide evidence of a *past* crime – a *past* act of perjury – is a basis to assert the Fifth Amendment. *See, e.g.*, *DeLeon-Reyes v. Guevara*, 2020 WL 5800727, at *4 (N.D. Ill. 2020) ("[T]he courts that have analyzed the risk of perjury in the Fifth Amendment context have held that the Fifth Amendment only covers perjury arising from past testimony, not future testimony."); *United States v. Allmon*, 594 F.3d 981, 987 (8th Cir. 2010) ("[T]hose courts that have directly addressed the issue have held that the Fifth Amendment is concerned with perjury arising from past testimony, not present testimony.") (collecting cases); *United States v. Vavages*, 151 F.3d 1185, 1192 n.3 (9th Cir. 1998) ("Fear of a perjury prosecution can typically form a valid basis for invoking the Fifth Amendment only where the risk of prosecution is for perjury in the witness' *past* testimony.") (emphasis in original); *Benthos Master Fund, Ltd. v. Etra*, 2023 WL 4350594, at *11 (S.D.N.Y. 2023).

"I might lie" isn't a basis for asserting the Fifth Amendment. But "I might tell the truth, and if I do, it could come back to bite me because I lied before" is a legitimate basis to invoke the Fifth Amendment. A witness cannot avoid the witness stand based on the possibility of telling future lies and committing future perjury. But a witness can invoke the Fifth Amendment if truthful testimony would provide evidence of past lies and past perjury.

Here, Sabaini testified at length about his relationship with Howard. Given the dynamics of the case, Sabaini faces a real-world risk that future truthful testimony could expose him to additional criminal jeopardy.

### III. Cross Examination.

Sabaini's testimony at Howard's trial also would expose him to cross examination. Sabaini has a valid basis to invoke the Fifth Amendment in light of what could happen during cross examination.

The Fifth Amendment applies to *testimony*, not merely testimony on direct examination. Cross examination counts, too. A witness can assert his Fifth Amendment privilege based on concern about potential lines of cross examination. *See United States v. Chapman*, 765 F.3d 720, 731 (7th Cir. 2014) ("[T]he witness's Fifth Amendment privilege must be honored even if the danger of self-incrimination arises from cross-examination rather than direct examination."); *United States v. Longstreet*, 567 F.3d 911, 923 (7th Cir. 2009) (concluding that the district court did not abuse its discretion by permitting a witness to invoke his Fifth Amendment privilege, given that "even if [the witness's] testimony on direct examination was limited to non-incriminating statements, his testimony would have exposed him to 'broad-ranging cross-examination'" that could have implicated him) (citation omitted); *United States v. Herrera-Medina,* 853 F.2d 564, 567–68 (7th Cir. 1988) (opining that the witness's "fear of self-incrimination was hardly 'fanciful'" given the threat of wide-ranging cross-examination by the prosecution); *United States v. Plescia,* 48 F.3d 1452, 1464 (7th Cir. 1995) ("The district court may refuse to permit a witness to testify when that witness' right against self-incrimination precludes effective cross-examination.").

Here, the government believes that it has fertile ground for cross examination. The government filed a motion to allow impeachment of Sabaini with jail-recorded telephone conversations. *See* Gov't Mtn. to Allow Impeachment (Dckt. No. 304). According to that motion, the recorded calls show that Sabaini agreed to a *quid pro quo*. *Id.* at 6–7. The government contends that Howard agreed to prepare an affidavit for Sabaini's criminal case. *Id.* In exchange, Sabaini would testify at Howard's trial. *Id.*

Sabaini's wife discussed the *quid pro quo* in a September 2023 recorded call. *Id.* at 6. In the call, she informed Sabaini that she had emailed Howard's lawyer and had written the following: "I believe it was discussed for his [Sabaini's] cooperation that you guys were going to provide to him bank statements and a sworn statement about sham money." *Id.* In other words, the recorded call arguably suggests that Sabaini and Howard were coordinating their testimony.

Sabaini's counsel expressed concern that the government could cross examine Sabaini based on those recordings. That testimony would create risks. As Sabaini's counsel sees it, the government could try to use the contents of those recordings to form the basis of an obstruction charge. So testimony about those calls could provide the government with evidentiary ammunition.

That concern is not fanciful. The government has alluded to potential jeopardy based on the recorded calls. At the hearing on April 30, the government stated that the calls appear to indicate that Sabaini had engaged in a scheme to provide gratuities to Howard in violation of federal law. To put a finer point on it, the government thinks that the recordings indicate

8

obstructive conduct between Howard and Sabaini that falls within the statute of limitations. That conduct could give rise to criminal liability. And the government revealed plans to ask Sabaini about that conduct if he takes the stand.

The government has made allusions that it has other information about the relationship between Sabaini and Howard, too. By the sound of things, there is more out there.

Putting everything together, the government plans to pursue a line of cross examination that could lead to obstruction charges against Sabaini. Sabaini's concern about cross examination about the jail-recorded calls is enough, standing alone, for him to exercise his Fifth Amendment privilege. And more broadly, taking the witness stand would expose Sabaini to other risks, because cross examination could go in lots of different directions.

## Conclusion

In sum, at defense counsel's request, this Court carefully considered the issue of Sabaini's Fifth Amendment rights. This Court held an *in camera* hearing with Sabaini himself. After considering the record, this Court concludes that Sabaini has a legitimate basis to assert his Fifth Amendment privilege against self-incrimination.

Date: May 6, 2024

Steven C. Seeger
United States District Judge