UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 18-cr-667 |
| v. | ) | |
| | ) | Hon. Steven C. Seeger |
| GARY HOWARD | ) | |
| _____ | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Gary Howard asserted the public authority defense after getting charged with four drug-related offenses. The government, in turn, moved to bar the public authority defense at the upcoming trial. *See* Govt. Mtn. (Dckt. 249).

The government's motion to bar Defendant Howard's public authority defense (Dckt. No. 249) is hereby granted in large part. The punchline is that Defendant has not laid a sufficient evidentiary foundation for a public authority defense. At least not yet.

### Background

A four-count superseding indictment charged Gary Howard with four drug offenses, including conspiracy to knowingly and intentionally possess with the intent to distribute cocaine (Counts 1 and 3), attempt to knowingly and intentionally possess with intent to distribute cocaine (Count 2), and knowingly and intentionally distributing and causing to be distributed cocaine (Count 4).

In a nutshell, the indictment alleges that Defendant engaged in actual or attempted narcotics transactions on two specific days in 2017 and 2018. The indictment charged Defendant with selling 57 ounces of cocaine to a DEA confidential source on January 13, 2017, and attempting to buy 10 kilograms of cocaine from another DEA confidential source on July 2, 2018.

Defendant Howard pleaded not guilty. Defendant also responded by asserting the public authority defense. The gist of the defense is that Anthony Sabaini – an agent of the Department of Homeland Security – authorized, directed, or asked Howard to engage in the two narcotics transactions in question on January 13, 2017 and July 2, 2018. Defendant contends that he was a confidential informant for the Department of Homeland Security.

The government moved to preclude the public authority defense at trial, based on a lack of evidentiary support. *See* 6/30/23 Govt. Mtn. (Dckt. No. 249). The government argued that this Court "should altogether prohibit defendant from pursuing and developing a public authority

defense at trial, or alternatively, require defendant to provide a legally sufficient factual proffer prior to trial before making any reference to that defense, including his purported work as a [Confidential Informant], to the jury." *Id.* at 1. Separately, the government also filed a freestanding motion for Defendant to make a proffer of the factual foundation for the defense. *See* 5/13/22 Govt. Mtn. (Dckt. No. 215).

Defendant filed a response brief. *See* 8/12/23 Def.'s Brf. (Dckt. No. 264). Defendant pointed to information about his tenure as a confidential informant for Homeland Security.

The government later supplemented the record. The government filed a collection of material, including a transcript from the suppression hearing in this case before Judge Lee (this Court's predecessor, before reassignment) on September 26, 2019. *See* 8/15/23 Govt. Suppl. (Dckt. No. 266).

At one point, this Court decided that it did not need any additional proffer from Defendant. *See* 9/6/23 Order (Dckt. No. 282). This Court wanted to assess the proffer made by Defendant in his brief, before deciding whether another proffer was necessary. *Id.*; *see also* 4/29/24 Order (Dckt. No. 324).

Defendant's assertion of the public authority defense involved an evidentiary wrinkle. Defendant wanted to support his defense by calling Anthony Sabaini as a witness. The issue came to a head shortly before trial, which was originally set for September 2023. At that point, Sabaini (again, a former agent with Homeland Security) was awaiting sentencing in his own case. He was charged and convicted of financial crimes.

For a while, it was unclear whether Sabaini would assert the Fifth Amendment if called to testify in the case at hand. That is, the parties did not know if Sabaini would be willing to testify after he received his sentence. Defendant wanted Sabaini to testify, believing that Sabaini would support the public authority defense.

This Court ultimately granted Defendant's unopposed motion to reschedule the trial. In 2023, while Sabaini was awaiting sentencing, Sabaini's then-counsel reported that Sabaini likely would be willing to testify in the case at hand after Sabaini's sentencing. *See* 9/6/23 Order (Dckt. No. 287). So this Court reset trial for May 2024.

In the months that followed, this Court presided over a number of hearings to discuss the public authority defense. In particular, the parties discussed whether Sabaini would assert the Fifth Amendment if called to testify. *See, e.g.*, 9/6/23 Order (Dckt. No. 287); 12/13/23 Order (Dckt. No. 295); 3/19/24 Order (Dckt. No. 302); 3/22/24 Order (Dckt. No. 303); 4/4/24 Order (Dckt. No. 309); 4/10/24 Order (Dckt. No. 310); 4/17/24 Order (Dckt. No. 320); 4/30/24 Order (Dckt. No. 332).

Getting to the bottom of that question took some doing. Sabaini's appellate counsel came and went. *See* Def.'s Status Report Regarding the Testimony of Anthony Sabaini (Dckt. No. 301); Def.'s Status Report (Dckt. No. 306); Def.'s Status Report (Dckt. No. 308). Another attorney for Sabaini came, and then left.

This Court wanted to ensure that Sabaini had counsel. After all, Sabaini appealed the judgment in his criminal case, and this Court did not know what else might be out there. So this Court appointed him a lawyer.

Sabaini's appointed counsel soon appeared. At a recent hearing, Sabaini's counsel represented that Sabaini would assert the Fifth Amendment at trial in the case at hand. *See* Sabaini's Status Report (Dckt. No. 317) ("If called as a witness in this proceeding, it is Mr. Sabaini's intention to assert his Fifth Amendment privilege to remain silent, regardless of who may call him as a witness.").

In response, defense counsel asked the Court to conduct an *ex parte* hearing with Sabaini, and explore whether he has a basis to assert the Fifth Amendment. *See* 4/17/24 Order (Dckt. No. 320). Judge Lefkow followed a similar procedure when Fifth Amendment questions came up in a case involving Jon Burge, the former head of the Chicago Police Department. *See* 6/2/10 Order, *United States v. Burge*, 08-cr-846 (N.D. Ill.) (Dckt. No. 261) (Lefkow, J.).

Defense counsel later filed under seal a list of 95 questions, and asked this Court to conduct an *in camera* examination of Sabaini. "The questions are submitted for testing Mr. Sabaini's blanket claim of Fifth Amendment Privilege asserted before the Court."[1] *See* 4/29/24 Def.'s *Ex Parte* Filing of Potential Questions for Anthony Sabaini to Assess Fifth Amendment Privilege (Dckt. No. 322).

As Defendant requested, this Court presided over an *ex parte* hearing with Sabaini and his counsel on April 30, 2024, without objection from the government or Sabaini. The goal of the hearing was to discuss his anticipated testimony, and evaluate the possible assertion of the Fifth Amendment.

Along the way, this Court learned more information about what Sabaini would say if called to testify about the facts underlying the public authority defense. That is, this Court examined Sabaini about whether he requested, directed, or authorized Howard to engage in the two transactions in question, and whether he had the actual or apparent authority to do so. *See United States v. Holmquist*, 36 F.3d 154, 161 n.7 (1st Cir. 1994) ("[W]e have painstakingly checked the materials tendered *in camera* and find no colorable or cognizable basis for a defense of actual public authority.").

---

[1] The filing is under seal, but this Court previously read this introductory sentence into the record, without objection. The Court did so to give the government and the public a sense of what Defendant filed.

Meanwhile, this Court circled-back with the parties about the evidentiary basis for the public authority defense more broadly. This Court invited Defendant to submit any additional evidence that would lay the factual foundation for a public authority defense. *See* 4/29/24 Order (Dckt. No. 324). "After closely reviewing the record, the Court wants to revisit the issue of a pretrial proffer with the parties. And more precisely, the Court invites Defendant to make a pretrial proffer of any evidence that supports the public authority defense." *Id.*

That invitation led to supplemental submissions from the parties. The government submitted transcripts with pin cites to relevant testimony. *See* 4/30/24 Govt. Suppl. (Dckt. No. 335). The government included transcripts from the *Sabaini* trial, including testimony from Anthony Sabaini himself. *Id.* Defendant also supplemented the record with a collection of exhibits. *See* Def.'s Suppl. (Dckt. No. 335).

On May 1, 2024, this Court announced two oral rulings, with opinions to follow. The Court concluded that Sabaini has a legitimate basis to assert the Fifth Amendment. The Court also concluded that Defendant had not come forward with sufficient evidence to give rise to a public authority defense. The Court made those oral rulings so that the parties could prepare for trial accordingly, with opinions to follow.

This Court has separately issued an opinion on the Fifth Amendment issue. *See* 5/6/24 Mem. Opin. & Order (Dckt. No. 342). The opinion at hand addresses the evidentiary foundation for the public authority defense.

## Analysis

Overall, this Court spent the last few months discussing the public authority defense with the parties, and evaluating the evidentiary record. The Court went through that process for good reason. "A criminal defendant is entitled to such an instruction [about the public authority defense] only if there is evidentiary support for it." *See United States v. Strahan*, 565 F.3d 1047, 1050–51 (7th Cir. 2009).

"A defendant is entitled to a theory of defense instruction if, inter alia, the theory is supported by the evidence." *See United States v. Baker*, 438 F.3d 749, 758 (7th Cir. 2006). A court "may preclude an affirmative defense by motion in limine only where the court accepts as true the evidence proffered by the defendant and finds that the evidence proffered by the defendant, even if believed, would be insufficient as a matter of law to support the affirmative defense." *Id.* at 753.

The public authority defense applies when "the defendant engages in conduct that the defendant knows to be otherwise illegal but that has been authorized by the government." *See United States v. Stallworth*, 656 F.3d 721, 727 (7th Cir. 2011). That is, the public authority defense "require[s] that a government official affirmatively communicate to the defendant that he is authorized to engage in certain conduct without incurring criminal liability." *Id.* at 726.

"[T]he public-authority defense requires reasonable reliance by a defendant on a public official's directive to engage in behavior that the defendant knows to be illegal." *See Strahan*, 565 F.3d at 1051.

The public authority defense has three elements: authorization, authority, and reasonableness. Specifically, a defendant must prove:

1. An agent, representative, or official of the United States government requested, directed, or authorized the defendant to engage in the conduct charged against the defendant;

2. The agent, representative, or official had the actual authority to grant authorization for the defendant to engage in the charged conduct; and

3. The defendant reasonably relied on the authorization of the agent, representative, or official when engaging in the charged conduct.

*See* Seventh Circuit (Criminal) Pattern Instructions (2023) 6.06 – Reliance on Public Authority.

The public authority defense is an affirmative defense, so the defendant has the burden to prove the defense by a preponderance of the evidence. *Id.*; *see also Dixon v. United States*, 548 U.S. 1 (2006).

The public authority defense is a once-in-a-blue-moon kind of defense. "Published decisions pertaining to the defense of actual public authority are sparse, possibly because reliance on the defense is rare." *United States v. Pitt*, 193 F.3d 751, 756 (3d Cir. 1999).

Courts exercise "great caution" when allowing the public authority defense, and for good reason. *See, e.g.*, *United States v. Thomas*, 214 F. Supp. 3d 187, 192 (E.D.N.Y. 2016) (quoting *United States v. Abcasis*, 45 F.3d 39, 44–45 (2d Cir. 1995)); *United States v. Mergen*, 764 F.3d 199, 204 (2d Cir. 2014). The defense is "narrowly defined." *See United States v. Navarro*, 2023 WL 4936723, at *4 (D.D.C. 2023) (quoting *United States v. Alvarado*, 808 F.3d 474, 484 (11th Cir. 2015)); *United States v. Eicher*, 2023 WL 3619417, at *2 (D.D.C. 2023) (opining that invocation of the public authority defense "requires defendants to meet a high bar") (cleaned up); *cf. United States v. Howell*, 37 F.3d 1197, 1204 (7th Cir. 1994) (explaining that the related defense of entrapment by estoppel "is rarely available").

A close cousin of the public authority defense is the defense of entrapment by estoppel. That defense applies when a defendant engages in conduct that he believes is lawful, based on a representation by the government. Entrapment by estoppel applies when a federal officer tells a defendant that conduct is lawful, and the defendant believes it and acts accordingly, but the conduct turns out to be unlawful. *See United States v. Baker*, 438 F.3d 749, 755 (7th Cir. 2006) ("[T]he entrapment by estoppel defense requires that the government 'actively mislead the

defendant; and that the defendant's reliance be actual and reasonable in light of the identity of the agent, the point of law represented, and the substance of the misrepresentation.'") (citation omitted).

That's a different situation than the public authority defense, which applies when a defendant engages in conduct that he knows is unlawful, but authorized by the government. *See Stallworth*, 656 F.3d at 726–27 ("The conceptual difference is that with the public authority defense the defendant engages in conduct that the defendant knows to be otherwise illegal but that has been authorized by the government, whereas with entrapment by estoppel the defendant, relying on the government's statements, believes that his conduct is not prohibited."); *United States v. Jumah*, 493 F.3d 868, 874 n.4 (7th Cir. 2007) ("[I]n the case of the public authority defense, the defendant engages in conduct at the request of a government official that the defendant knows to be otherwise illegal, while in the case of entrapment by estoppel, because of the statements of an official, the defendant believes that his conduct constitutes no offense.").[2]

The public authority defense applies when the government authorizes a defendant to do "X," even though "X" is illegal. The entrapment by estoppel defense applies when the government tells a defendant that "X" is legal, when in reality "X" is illegal.

By way of analogy, the public authority defense would apply if a traffic cop waves you through a red light when driving with vast hordes of sports fans leaving a stadium. Everyone knows that driving through a red light is illegal, but a police officer might authorize you to do it in the interest of managing traffic. The entrapment by estoppel defense would apply if you drive the wrong way down a one-way street, after a police officer told you that it was a two-way street.

Here, Defendant allegedly engaged in drug transactions, and he does not allege that he thought that buying and selling cocaine was actually legal. *See Stallworth*, 656 F.3d at 727 ("For what it is worth, Stallworth's claim looks to us like a public authority defense. He was engaged in what he knew to be an illegal drug transaction, but he did so (he says) for law enforcement purposes that should insulate him from liability."). Instead, Defendant is arguing that he believed that he had authorization to engage in the otherwise illegal act of buying and selling cocaine.

Defendant acknowledged that he is not asserting the defense of entrapment by estoppel. *See* 4/30/24 Order (Dckt. No. 332). So only the public authority defense is on the table. But the government believes that the public authority defense should be off the table, too.

At this juncture, the question is not whether the government or Defendant Howard has the more persuasive position when it comes to the public authority defense. That is, the question is not the weight of the evidence. Instead, the question is whether Defendant put enough

---

[2] There is another difference, too. The defense of entrapment by estoppel also applies when the government official acts with actual or apparent authority. But the vast majority of courts hold that the public authority defense applies only when the officer had actual authority to direct the defendant to commit the illegal act.

evidence on the table and made a *prima facie* showing that there is an adequate factual footing for the defense.

After carefully reviewing the record as a whole, the Court concludes that Defendant has fallen short. At its core, Defendant's argument rests on little more than his relationship with Sabaini, and his status as a confidential informant. *See* 8/12/23 Def.'s Brf. (Dckt. No. 264). That's not enough.

Defendant crystallized the record into seven facts: (1) Defendant worked with Sabaini as a confidential informant; (2) Sabaini bluffed or lied to get Defendant to work for him; (3) Defendant provided information during 2016 to 2018 that would sometimes result in seizures of drugs or money; (4) Defendant was paid by Homeland Security; (5) Defendant provided information to Sabaini about drug dealing at a furniture store; (6) Defendant and Sabaini discussed working up a case around those individuals; and (7) Sabaini told Defendant to "get yourself in a position where we could do a drug bust." *See* 7/14/23 Def.'s Brf., at 7–8 (Dckt. No. 263) (quoting the transcript from the suppression hearing on September 26, 2019).

In a later filing, Defendant presented a collection of exhibits to support his defense. *See* Def.'s Suppl. (Dckt. No. 335). Viewed as a whole, the exhibits support a few points: (1) Howard was a confidential informant; (2) Howard and Sabaini talked on the phone before the July 2018 incident; (3) Howard previously was paid for his work as a confidential informant; and (4) Sabaini communicated with DEA agents after Howard was arrested in July 2018.

Distilled to its core, the argument boils down to Howard's status as a confidential informant. The argument goes something like this. Sabaini had actual authority to use Howard as a confidential informant, because Sabaini was an agent with the Department of Homeland Security. And Howard did, in fact, act as a confidential informant, and assisted Homeland Security in a variety of drug-related investigations. As Defendant sees it, that's enough to support a public authority defense.

Far from it. Noticeably missing is any evidence that Sabaini directed, authorized, or asked Defendant to buy or sell narcotics in January 2017 or July 2018.

The public authority defense "require[s] that a government official affirmatively communicate to the defendant that he is authorized to engage in certain conduct without incurring criminal liability." *See Stallworth*, 656 F.3d at 726; *see also id.* at 727 ("[U]nder [] the public authority defense . . . someone in the government would have had to authorize his actions."). The defense requires a "directive." *See Strahan*, 565 F.3d at 1051. Without evidence of authorization to commit a crime, there is no public authority defense.

Defendant's argument hovers at a high level of generality. It is not enough for Defendant to establish that he worked as a confidential informant. Working as an informant is not the same thing as receiving permission to engage in criminal behavior.

In fact, the Seventh Circuit made this very point in *Strahan*. "Here, the district court's refusal to instruct the jury on the public-authority defense was manifestly correct. No witness – not even Strahan – testified that Deputy Woods ever instructed or authorized Strahan to distribute crack cocaine. It is true that Woods used Strahan as a confidential informant, but their interaction was limited to Strahan helping Woods find fugitives." *Id.*

Other courts have recognized that a person's status as a confidential informant is not enough, standing alone, to give rise to the public authority defense. *See, e.g.*, *United States v. Londono*, 2017 WL 11577096, at *2 (S.D. Fla. 2017) ("The public authority defense requires more than merely being an informant and it cannot be merely an assumption unaccompanied by proof of authorization by the supervising agents."); *United States v. Maddicks*, 2017 WL 1788665, at *6 (E.D. Va. 2017) ("This Court separately finds that even if DEA Special Agents Beam and Koeppen had the authority to authorize the conduct charged in this case, there is clearly insufficient evidence in the record to reasonably support the finding that Defendant was directly, indirectly, or inferentially instructed by such Agents to possess large quantities of drugs and/or firearms."); *United States v. La Cour*, 1992 WL 365372, at *3 (N.D. Ill. 1992) (concluding that the public authority defense could not apply because informants aren't "permitted to personally profit from the proceeds [of a narcotics transaction]. To the contrary, law enforcement agents do not have the authority to violate the federal narcotics laws.").

The public authority defense potentially could apply if a DEA agent directed someone to buy or sell drugs. "[A]n informant who participates in a typical undercover drug sting operation at the behest of the DEA could potentially assert a public authority defense were he later to be prosecuted for his participation." *See United States v. Alvarado*, 808 F.3d 474, 484 (11th Cir. 2015).

But the defense isn't available unless the federal officer affirmatively authorized the person to engage in the drug transaction. "[A] federal law enforcement officer must have *actually authorized* the defendant to commit the particular criminal act at issue, and the defendant must have reasonably relied on that authorization when engaging in that conduct." *Id.* (emphasis added).

An essential building block of the public authority defense is evidence that a federal officer or agent in fact authorized the defendant to commit the criminal act. The defense "exists where a defendant has *in fact* been authorized by the government to engage in what would otherwise be illegal activity." *United States v. Giffen*, 473 F.3d 30, 39 (2d Cir. 2006) (emphasis added). The public authority defense requires evidence that a defendant received the green light from the government to commit a crime.

The public authority defense requires granularity when it comes to authorization to commit a crime. Working with the government in general isn't enough. To satisfy his evidentiary burden, a defendant would need to come forward with evidence that a federal officer

authorized, directed, or asked him to engage in the "conduct charged." *See* Seventh Circuit (Criminal) Pattern Instructions (2023) 6.06 – Reliance on Public Authority.

In the case at hand, Defendant would need to present evidence that Sabaini or another federal officer authorized, directed, or asked him to engage in the drug transactions on January 13, 2017 and July 2, 2018.

Based on the record, this Court sees no such evidence. The record lacks evidence that Sabaini ever gave Howard the green light to buy or sell cocaine during the deals in question in January 2017 and July 2018.

Working and cooperating with the government writ large isn't enough to give rise to the public authority defense. Helping the government with drug investigations isn't enough, either. Cooperation, without more, is not a license to engage in unlawful behavior. Working with the government is not a blank check to commit crimes. To have a public authority defense, a defendant needs to come forward with evidence that he received a permission slip from a federal officer to commit a criminal act.

It's not hard to see why the public authority defense applies only when a federal officer directly authorizes a defendant to engage in criminal behavior. After all, the defense is about the government giving someone permission to commit a crime. That's serious business.

A different approach would allow things to spin out of control. Lots of people cooperate with law enforcement, in one form or another. If run-of-the-mill cooperation with the government were enough to give rise to a public authority defense, all bets would be off, and chaos would ensue. *See United States v. Wilson*, 721 F.2d 967, 975 (4th Cir. 1983) ("It is quite different for Wilson to claim that he could be found to lack the specific intent required for conviction on the conspiracy and § 2778 counts, merely because he occasionally met with government officials, while undertaking private information-gathering operations and sending the government unsolicited plans of indeterminate value. Such an unwarranted extension of the good faith defense would grant any criminal *carte blanche* to violate the law should he subjectively decide that he serves the government's interests thereby. Law-breakers would become their own judges and juries.").

Defendant did not present evidence that Sabaini authorized him to buy or sell cocaine on the days in question. Without evidence of authorization, there is no basis for a public authority defense. *See Strahan*, 565 F.3d at 1051 ("[T]he district court's refusal to instruct the jury on the public-authority defense was manifestly correct. No witness – not even Strahan – testified that Deputy Woods ever instructed or authorized Strahan to distribute crack cocaine."); *Stallworth*, 656 F.3d at 727 ("[U]nder either the public authority defense or entrapment by estoppel, someone in the government would have had to authorize his actions. Here, there was no one, and so it makes no difference whether this nonexistent person had actual or apparent authority. Stallworth thus had no right to present either defense to the jury."); *United States v. Neville*, 82

F.3d 750, 761 (7th Cir. 1996) ("We also fail to see anywhere in the record any 'active misrepresentation' which authorized Sanchez to obtain, deal, and profit from Dilaudid to the tune of hundreds of thousands of dollars."); *see also United States v. Parker*, 267 F.3d 839, 844 (8th Cir. 2001) ("The public authority defense requires a defendant to show that he was engaged by a government official to participate in a covert activity. . . . There was no evidence presented that Parker acted on the request or advice of a duly authorized law enforcement official concerning his continued possession and accumulation of child pornography."); *United States v. Sheppard*, 2022 WL 17978837, at *9 (D.D.C. 2022) ("[T]he public authority and entrapment-by-estoppel defenses are available only when the official's statements or conduct state or clearly imply that the defendant's actions are lawful.").

"Although the D.C. Circuit did not say so explicitly, this requirement of a clear statement or implication of authorization by the government official is necessary to avoid what that Court has called the 'Becket defense,' referring to the murder of the Archbishop of Canterbury Thomas Becket, supposedly undertaken by knights in response to King Henry II's indirect request, attributed as 'Who will free me from this turbulent priest?' *North*, 910 F.2d at 883 n.12; *see also United States v. Ehrlichman*, 546 F.2d 910, 926 (D.C. Cir. 1976). Such a defense would impermissibly shield from prosecution criminal conduct undertaken at the mere insinuation of a king – or in this case, a president." *United States v. Eicher*, 2023 WL 3619417, at *3 n.4 (D.D.C. 2023).

At this point, the question is simply whether Defendant presented sufficient evidence on his side of the ledger. The lack of evidence is enough to resolve the motion. Even so, the Court acknowledges the evidence presented by the government.

At his criminal trial, Sabaini testified that he did not authorize Howard to buy or sell drugs on either of the two days in question. Specifically, he testified that he did not authorize Howard to buy or sell drugs on January 13, 2017 (*i.e.*, the incident with DEA Task Force Officer Hahn),[3] or on July 2, 2018 (*i.e.*, the day of his arrest):

> Q:    So, I believe you testified that when he gets arrested by
> Special Agent Rodekohr, he's not authorized to do any sort
> of drug deal on that day, correct?
>
> A:    That's right.
>
> Q:    Okay. Is that the same thing for the incident with TFO
> [Task Force Officer] Hahn? You did not authorize him to
> sell cocaine to anybody on that date, right?

---

[3] Earlier in the testimony, Sabaini explained that the incident with Task Force Officer Hahn occurred in January 2017. *See* Sabaini Trial Tr., at 2023:13–19 (Dckt. No. 330-1).

> A:     That's correct.  I did not authorize that.

See Sabaini Trial Tr., at 2167:22 – 2168:5 (Dckt. No. 330-1).

In another passage, Sabaini testified that Howard was not working on behalf of Homeland Security when he allegedly attempted to buy cocaine in July 2018:

> Q:     Now, subsequent to 2017, specifically July 2nd of 2018, did you become aware that Gary Howard got arrested by the DEA?
>
> A:     Yes, I did.
>
> Q:     And how did you get – how did you become aware?
>
> A:     I received a phone call from DEA, two DEA agents.
>
> Q:     And do you remember who they were?
>
> A:     Special Agent Rodekohr and Glotta.
>
> Q:     And what, if anything, did they tell you?
>
> A:     They told me that they had just arrested Gary Howard attempting to buy 10 kilos of cocaine and that during the course of the arrest, Gary Howard related to them that he was an informant for Homeland Security Investigations.
>
> Q:     And was that the first time you heard about this?
>
> A:     Yes, that was the first time I heard about it.
>
> Q:     *Was Gary Howard working on behalf of Homeland Security regarding that incident?*
>
> A:     *He was not.*

See Sabaini Trial Tr., at 2044:21 – 2045:12 (Dckt. No. 266-1) (emphasis added).

During the suppression hearing before Judge Lee (in the case at hand), Sabaini cemented the point.  Sabaini testified that he did not authorize Howard to buy drugs on July 2, 2018:

> Q:     Did you authorize Mr. Howard to conduct any operations that day on July 2nd?
>
> A:     No, not that day.

11

> Q:    Had you given him any buy money at all?
>
> A:    No, I hadn't.
>
> Q:    You hadn't given him, like, $130,000 in buy money?
>
> A:    No, I hadn't.

*See* 9/26/19 Tr., at 119:24 – 120:5 (Dckt. No. 330-3).

Again, the absence of evidence on Defendant's side of the ledger is what matters, not the presence of evidence on the government's side of the ledger. This Court is not weighing the evidence. If Defendant had presented enough evidence to support a *prima facie* assertion of the defense, then this Court would allow it, even if the government presented countervailing evidence on the other side of the scale. But here, Defendant did not bring enough evidence to the table to get to a jury.

Based on the *ex parte* hearing with Sabaini and his counsel, this Court is confident that any testimony by Sabaini would not support the public authority defense. This Court did not hear any reason to believe that Sabaini directed, authorized, or asked Howard to engage in the drug transactions in January 2017 or July 2018. In fact, this Court heard the opposite. Based on the proffer, this Court has no reason to think that Sabaini would factually support the public authority defense at trial.[4]

A legal issue lurks in the background, about a different element of the defense. According to the Seventh Circuit's Pattern Jury Instructions, the public authority defense requires "actual authority." But the commentary explains that the Seventh Circuit has not decided whether the public authority defense requires actual authority, or whether apparent authority can suffice. *See* Seventh Circuit (Criminal) Pattern Instructions (2023) 6.06 – Reliance on Public Authority.

In fact, the Seventh Circuit has expressly reserved that question for a later day. *See, e.g.*, *Stallworth*, 656 F.3d at 727 ("[A]s our sister circuits see it, the public authority defense is limited to those situations where the communication was from a government official acting with actual authority, and not merely apparent authority. We have not had occasion to address this, nor do we find it necessary to do so here."); *Baker*, 438 F.3d at 754 (stating that the issue is "best saved for another day").

Courts of Appeals widely hold that the public authority defense requires actual authority, not apparent authority. *See, e.g.*, *United States v. Holmquist*, 36 F.3d 154, 161 n.7 (1st Cir. 1994)

---

[4] Again, this Court presided over that hearing on an *ex parte* basis. Even so, this Court told Sabaini and his counsel that the Court planned to give the parties the punchline, and Sabaini agreed. This Court also revealed its ruling orally during a later hearing with all parties on May 1, 2024, and gave the bottom-line conclusion about what Sabaini had said on the merits of the defense.

("The nonexistent defense of apparent public authority . . . must not be confused with the potentially viable defense of actual public authority, which may come into play when a defendant undertakes certain acts, reasonably relying on the statements of a government agent cloaked with actual authority."); *United States v. Duggan*, 743 F.2d 59, 84 (2d Cir. 1984) ("We decline to adopt [the] view that a defendant may be exonerated on the basis of his reliance on an authority that is only apparent and not real."); *United States v. Pitt*, 193 F.3d 751, 758 (3d Cir. 1999), *abrogated on other grounds by Honeycutt v. United States*, 581 U.S. 443 (2017) ("This Court . . . limits the use of the defense of public authority to those situations where the government agent in fact had the authority to empower the defendant to perform the acts in question."); *United States v. Fulcher*, 250 F.3d 244, 252 (4th Cir. 2001) ("We hold, consistent with our sister circuits that have considered the question, that intent is not negated when a defendant cooperates with an official who possesses only *apparent* authority.") (emphasis in original); *United States v. Sariles*, 645 F.3d 315, 317 (5th Cir. 2011) ("[W]e find persuasive the reasoning of the great majority of our sister circuits that require actual authority on the part of the law enforcement officer, and we choose to follow that path."); *United States v. Theunick*, 651 F.3d 578, 589 (6th Cir. 2011) ("First, with the public authority defense, the defendant seeks exoneration based on his reasonable reliance on the authority of a government official to engage him in a covert activity.  The validity of this defense depends upon whether the government agent in fact had the authority to empower the defendant to perform the acts in question.") (cleaned up); *United States v. Alvarado*, 808 F.3d 474, 484 (11th Cir. 2015) (holding that a defendant asserting the public authority defense must show that "[t]he government official on whom the defendant purportedly relied must have actually had the authority to permit a cooperating individual to commit the criminal act in question"); *see also United States v. Navarro*, 651 F. Supp. 3d 212, 241 (D.D.C. 2023) ("Defendant's defiance based on the *apparent* authority of the former President is not enough to make out a public authority defense.") (emphasis in original); *United States v. Eicher*, 2023 WL 3619417, at *2 (D.D.C. 2023) ("[T]he public authority defense requires reasonable reliance upon the *actual* authority of a government official to engage him in a covert activity.") (cleaned up) (emphasis in original).[5]  But the case law is not quite uniform.[6]

---

[5]  Rule 12.3(a)(1) of the Federal Rules of Criminal Procedure requires a defendant to give advance notice if he intends to assert "a defense of actual or believed exercise of public authority."  *See* Fed. R. Crim. P. 12.3(a)(1).  But that rule is "merely a notice provision," and "does not in any way alter the substantive legal standards with regard to the public authority defense."  *See United States v. Fulcher*, 250 F.3d 244, 254 n.5 (4th Cir. 2001); *see also United States v. Pitt*, 193 F.3d 751, 757 (3d Cir. 1999).

[6]  *See United States v. Alvarado*, 808 F.3d 474, 485–86 (11th Cir. 2015) ("[N]ot all courts find merit in this dichotomy between actual and apparent authority.  In particular, the Second Circuit has questioned the wisdom of such a distinction, given that the motivating principle underlying the doctrine is the unfairness of prosecuting one who has been led by the conduct of government agents to believe his acts were authorized.") (cleaned up) (citing *United States v. Giffen*, 473 F.3d 30, 42 n.12 (2d Cir. 2006)).  The Eleventh Circuit in *Alvarado* pointed to the Second Circuit's discussion in *Giffen*, but the passage in *Giffen* involved the entrapment by estoppel defense, not the public authority defense.  There isn't a lot of case law supporting the notion that the public authority defense should cover situations when the officer acted with apparent authority but not actual authority.  Maybe the most cited pronouncement appeared in the splintered and oft-criticized opinions by the D.C. Circuit in *Barker*, with all three judges writing separately.  *See United States v. Barker*, 546 F.2d 940, 947 (D.C. Cir. 1976) (Wilkey, J.) ("[I]n certain

On this record, it makes no difference. Defendant Howard's assertion of the affirmative defense fails on another prong, meaning the first element of the defense. That is, Defendant has not come forward with sufficient evidence that Sabaini authorized the drug transactions in question (*i.e.*, element one). So, this Court does not need to decide whether Defendant satisfied the second prong, namely, evidence of actual authority (*i.e.*, element two). And because this Court does not need to address that prong, this Court does not need to address whether apparent authority, as opposed to actual authority, could give rise to a public authority defense.

That said, the legal question might be closer than it first appears. It is not hard to envision scenarios where it seems palpably unfair to a criminal defendant if the public authority defense does not apply to apparent authority. *See Eicher*, 2023 WL 3619417, at *2 (noting that the public authority defense and the entrapment by estoppel defense "are rooted in 'fundamental fairness concerns of the Due Process Clause'") (citation omitted).

Consider the following example. Think back to the example of driving through a red light after getting waved through by a police officer after a sporting event. Imagine if you got a ticket, despite getting express authorization from the police officer. It would be unsatisfying to hear that only the State Police – not a local police officer – had the authority to let you drive through a red light. It sounds like a raw deal.

Consider a second example. Imagine flying home from a moose-hunting trip in Alaska, and lugging home your can of bear spray. In the security line at the airport, a nearby sign prohibits passengers from taking bear spray on board. Even so, imagine if a friendly TSA agent at the security check-in tells you that you can take your bear spray with you on the flight. And then, imagine boarding the flight, and then getting arrested for bringing a dangerous weapon on the plane.

In that scenario, you naturally would point to the authorization that you received from the TSA agent during the security check-in process. It would be more than a little unsatisfying – and more than a little unfair – to hear that the TSA agent didn't have the authority to tell you what he told you. That's cold comfort.

---

situations there is an overriding societal interest in having individuals rely on the authoritative pronouncements of officials whose decisions we wish to see respected."). *But see United States v. North*, 910 F.2d 843, 879 (D.C. Cir. 1990), *withdrawn and superseded in part*, 920 F.2d 940 (D.C. Cir. 1990) ("[W]e have read *Barker*, and reread it, and simply cannot find in it a rule of law to apply."); *United States v. Sariles*, 645 F.3d 315, 318 (5th Cir. 2011) ("An opinion from one judge on a divided panel in the District of Columbia Circuit did recognize apparent authority as part of an exception to the mistake of law doctrine. But in that case all three judges wrote separately, and, as noted by the Second Circuit, apparent authority cannot be viewed as the rationale of the court because only one judge endorsed that theory.") (cleaned up).

Courts seem to take it as a given that apparent authority cannot give rise to a public authority defense. And by the look of things, the uniformity of that conclusion seems disproportionate to the level of the analysis in the case law.

Much of the case law is conclusory. At this point, it has become string cite inertia. Frankly, a lot of the analysis appears in footnotes.[7] All too often, a discussion of this issue is relegated to judicial whispers.

The basis for limiting the public authority defense to cases involving actual authority isn't always well defined. One of the animating principles seems to be that a mistake of law is not a defense to criminal liability. That principle applies well when a criminal defendant does "X," believing that "X" is legal when it is actually illegal. The fact that the defendant had a mistaken belief about the law wouldn't let him off the hook.

That principle doesn't seem to fit as well when a federal officer tells a person that they can do "X," and it turns out that the officer didn't have the authority to give that directive. It doesn't feel quite like a garden-variety mistake of law. If anything, it's a mistake of law on the part of the federal official, who gave misdirection to the criminal defendant. And if it's a mistake of law by the federal official, it's hard to see why the criminal defendant should bear the cost of that mistake in a federal penitentiary.

Another theme seems to involve the compelling public interest in enforcing the criminal laws. A few of the judges in the splintered *Barker* decision discussed that rationale. *See Barker*, 546 F.2d at 964 (Leventhal, J.) ("The general principle that rejects the defense of ignorance of the requirements of the criminal law, or of mistake as to those requirements, is not a casual or happenstance feature of our legal landscape. . . . Great minds like Holmes and Austin have struggled with the tension between individual injustice and society's need and have concluded that recognition of the mistake of law defense would encourage ignorance rather than a determination to know the law, and would interfere with the enforcement of law, because the claim would be so easy to assert and hard to disprove."); *Barker*, 546 F.2d at 954 (Merhige, J.).

Under current case law, when it comes to the need for actual authority, the public interest in enforcing the criminal laws seems to take precedence over the interests of an individual criminal defendant. The interests of a criminal defendant get sacrificed in the name of promoting

---

[7] *See, e.g.*, *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994); *United States v. Fulcher*, 250 F.3d 244, 254 nn.4–5 (4th Cir. 2001); *United States v. Holmquist*, 36 F.3d 154, 161 n.7 (1st Cir. 1994). A leading case in this area is the Third Circuit's opinion in *United States v. Pitt*, 193 F.3d 751 (3d Cir. 1999). The Third Circuit in *Pitt* relied on the Eleventh Circuit's decision in *Baptista-Rodriguez*. But the Eleventh Circuit in *Baptista-Rodriguez* noted that the case law in this area is "muddled." *See Baptista-Rodriguez*, 17 F.3d at 1368 n.18.

the broader public good. One might wonder whether that approach seems upside down, and against the grain of criminal law more generally.

In fact, the case law is so murky that courts aren't always sure if the public authority defense is different than the entrapment by estoppel defense. The Seventh Circuit itself has called the distinction into question. *See United States v. Baker*, 438 F.3d 749, 753 (7th Cir. 2006) ("The parties rely heavily on cases from other circuits to argue there is indeed a difference between the two. A review of our own decisions does not reveal much in the way of useful analysis, although this is not surprising. In fact, what little discussion there is from our own circuit may indicate the defenses are not separate at all, but that the descriptions are merely synonymous.") (internal citations omitted); *see also United States v. Burrows*, 36 F.3d 875, 882 (9th Cir. 1994) ("The difference between the entrapment by estoppel defense and the public authority defense is not great. In the first, a government official commits an error and the defendant relies on it and thereby violates the law. In the second, a government official makes some statement or performs some act and the defendant relies on it, possibly mistakenly, and commits an offense in so doing.") (internal citations omitted).

At one point, the Seventh Circuit questioned whether the entrapment by estoppel defense should be renamed the "official authorization" defense. "'Entrapment by estoppel' is poorly named; it is among the justification defenses, rather than, as with simple entrapment, a means to curtail official misconduct. When a public official directs a person to perform an act, with assurance that the act is lawful under the circumstances, the person does not act with the intent required for conviction. So if a Secret Service agent asks an informant to sell some counterfeit bills to a person suspected of running a counterfeit-passing ring, the informant's acts are justified, even though they otherwise could be described as the distribution of counterfeit currency. We have called this justification 'entrapment by estoppel,' but the proposition is related to the rule that a person who asks the advice of counsel after providing complete disclosure, and then acts strictly in accord with the advice received, lacks the state of mind needed to support a conviction under many (though not all) criminal statutes, rather than to classic 'entrapment' doctrine. Perhaps entrapment by estoppel should be renamed the official authorization defense. For current purposes, however, the name does not matter." *See Kimani v. Holder*, 695 F.3d 666, 670 (7th Cir. 2012) (internal citations omitted).

If questions linger about whether the public authority defense is different than the entrapment by estoppel defense, then it is worth pausing to ask a related question. Why is apparent authority good enough for the entrapment by estoppel defense, but not the public authority defense?

One final note. Based on the record at hand, Defendant has not made a sufficient evidentiary showing to support a public authority defense. But Defendant has a right to testify (and, needless to say, an absolute right not to testify). If Defendant elects to testify at trial, and if that testimony is sufficient to give rise to a public authority defense, then this Court could revisit the question.

16

But in the meantime, the Court views the record as it currently stands. Based on the facts on the table, Defendant has not presented enough evidence to assert the public authority defense at trial.

### Conclusion

For the reasons stated above, the government's motion to bar the public authority defense is hereby granted.

Date: May 6, 2024

_____
Steven C. Seeger
United States District Judge

17